Hillsborough-southern judicial district
No. 2000-680

## THE STATE OF NEW HAMPSHIRE

v.

## EILEEN DOWDLE

Argued: July 11, 2002
Opinion Issued: September 18, 2002

*Philip T. McLaughlin*, attorney general (*Laura E. B. Lombardi*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, Eileen Dowdle, was convicted by a jury of one count each of arson, *see* RSA 634:1 (1996) (amended 1998), insurance fraud, *see* RSA 638:20 (1996) (amended 1996, 2001), and reckless conduct, *see* RSA 631:3 (1996). On appeal, she argues that the Superior Court (*Hampsey*, J.) erred by: 1) admitting forensic evidence that the State failed to preserve for trial; and 2) failing to grant a mistrial or give sufficient curative instructions. We reverse and remand.

The charges arose from the allegation that the defendant intentionally set fire to her house in Nashua. The cornerstone of the State's case was the defendant's confession to police that she set the fire. To corroborate her confession and establish a motive, the State introduced evidence that her family was having financial difficulties and that she wanted to move from her home because of problems with her neighbors. Further, during the defendant's confession, she stated that she used lighter fluid to start the fire, which she bought at a "CVS" store. The State introduced evidence that the "CVS" store carried the same brand of lighter fluid as the defendant stated she used to burn her house. It also introduced a videotape showing the defendant in the store at approximately the same time a container of that brand of lighter fluid was purchased.

The defendant claimed that she confessed to protect her husband because he was considered a suspect in the case. She contended that her neighbor, William Fair, who had had an altercation with the defendant's family and had threatened to burn down her house, was responsible for the fire. In addition, she presented rebuttal evidence to counter the State's claims of motive.

The State also introduced evidence that an accelerant consistent with the one the defendant described was used to start the fire. Prior to trial, the defendant filed a motion to exclude any evidence relating to forensic testing conducted by the State because it failed to preserve the evidence, depriving her of the ability to conduct her own analysis. She argued that the State failed to preserve charcoal strip samples taken from the scene in accordance with State Laboratory standards, which violated her right to due process under both the Federal and State Constitutions.

Following a pretrial hearing, the trial court denied the defendant's motion, ruling that while the State lost relevant evidence, it acted in good faith and without culpable negligence, and that any claimed prejudice resulting from the loss of the evidence was speculative. The defendant did introduce evidence at trial, however, showing possible cross-contamination of samples.

During the prosecutor's closing argument, he stated:

> [Defense counsel] told you their client's not guilty. She's innocent, she didn't do it. That's their job. They can't get up here and say, well, the facts are overwhelming. The truth is she did it. Would they be doing their job? No. Can they get up here in their opening statement and fabricate something or tell you something that they just recently c[a]me up with? Yeah. It's part of their job. It sounds strange, but they can do that, they can. They're good skillful experienced lawyers and they have a

job to do. Their job is to get their client off. Your job is to find the truth. Our job is to present to you all the evidence, present the truth to you. Their job is to obscure the truth if it hurts their client, to distract you from the truth.

Defense counsel promptly objected to the prosecutor's statements, at which point the trial court asked, "Can't this wait until he concludes?" Defense counsel renewed his objection and asked that the prosecutor's comments be stricken, and even suggested moving for a mistrial. The trial court stated that it would not grant a mistrial, but would give a curative instruction. The trial court subsequently instructed the jury as follows:

It is the job, it is not the function or the job of counsel for the State nor for the defendant to obscure the truth. Their job is to seek truth, their job is to represent the interest of their client, be it the State or the defendant. And to the extent that you have heard anything to the contrary, that is to be disregarded and it is stricken.

The defendant was convicted of arson, insurance fraud and reckless conduct. This appeal followed.

## I. Prosecutorial Misconduct

The defendant argues that the trial court committed reversible error by failing to grant a mistrial based upon the prosecutor's comments during closing argument. Even assuming a mistrial was not warranted, she argues that the court's curative instruction was inadequate. We first address the sufficiency of the trial court's curative instruction.

The State contends that the defendant did not object to the adequacy of the trial court's curative instruction and, therefore, the issue is not preserved for appeal. We disagree. Generally, "[a] contemporaneous objection is necessary to preserve a jury instruction issue for appellate review." *State v. Devaney*, 139 N.H. 473, 474 (1995). The purpose underlying our preservation rule, however, is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review. *See State v. Tselios*, 134 N.H. 405, 407 (1991).

■ Here, defense counsel objected to the prosecutor's comments. During a bench conference, counsel requested an instruction which would direct the jury to disregard the prosecutor's comments, inform them that it is defense counsels' job to represent their client and reaffirm that the State has the burden to prove its case. When counsel asked the trial judge

what the substance of his instruction would be, the judge responded, "I'll decide. Step back."

At that point, it was apparent that the court had "conclusively decided" to give a jury instruction it believed was adequate. *State v. Boetti*, 142 N.H. 255, 259 (1997). While counsel could have objected to the instruction itself, objection was not necessary because the court was already aware of the substance of defense counsel's request and it was the court's responsibility to give an effective curative instruction.

We turn, therefore, to the merits of the defendant's argument.

> The adequacy of a particular jury instruction necessarily depends on the capacity of the offending comment to lead to a verdict that could not otherwise be justly reached. While there may be some instances in which curative instructions would be inadequate as a matter of law, we base our review on the familiar presumption that jurors follow the trial court's instructions.

*Id.* at 259 (citations, quotations and brackets omitted).

The prosecutor's comments were improper and inexcusable. "A public prosecutor differs from the usual advocate in that his duty is to seek justice, not merely to convict[, and the] prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." *State v. Preston*, 121 N.H. 147, 151 (1981) (quotations and brackets omitted). We have cautioned prosecutors, on more than one occasion, to avoid conduct that could potentially prejudice a criminal defendant and have made clear that we would take a firm stand when addressing the consequences of such tactics. *See id.*

■ The prosecutor's argument constituted a personal attack on defense counsel. It impugned their integrity and demeaned their ethics. It created an inference for the jury that defense counsel not only was lying, but had to distort and obscure the truth because they knew the defendant was guilty. We have declared such conduct "unquestionably inappropriate." *Boetti*, 142 N.H. at 261. The instruction given by the trial judge was not responsive to the prosecutor's comments or sufficient to correct his misconduct. Although the trial judge may have given this particular instruction because he thought it was even-handed, equivocation was not the way to cure the harm.

Thus, despite the strength of the evidence against the defendant, to uphold her conviction and permit unfettered prosecutorial misconduct would "encourage prosecutorial 'piling on' in precisely those cases where a defendant has the most need of scrupulous adherence to the rules." *State*

*v. Stephens*, 525 S.E.2d 301, 308 n.5 (W. Va. 1999). Accordingly, we conclude that the trial court's curative instruction constituted reversible error warranting a new trial. In light of this holding, we need not consider whether a mistrial was required in this case.

Because the issue of the State's failure to preserve physical evidence is likely to arise on remand, we address it. *See State v. Duffy*, 147 N.H. 648, 652 (2001).

## II. Loss of Evidence

The defendant argues that the trial court violated her right to due process by refusing to bar the State from introducing forensic test results at trial. When a defendant asserts the protection of the Due Process Clauses of both the State and Federal Constitutions, we first examine the State claim. *State v. Bruce*, 147 N.H. 37, 40 (2001). "Because the Federal Constitution offers no more protection than our State Constitution, we need not conduct a separate federal analysis." *Id.*

There is no dispute that the State lost relevant evidence. In determining whether the loss resulted in a denial of due process,

> the State has the burden to demonstrate that it acted both with good faith, in the sense that it was free of any intent to prejudice the defendant, and without culpable negligence. If the State carries that burden, the defendant may not claim any relief unless he demonstrates that the lost evidence was material, to the degree that its introduction would probably have led to a verdict of not guilty, and that its loss prejudiced him by precluding the introduction of evidence that would probably have led to a verdict in his favor.

*State v. Giordano*, 138 N.H. 90, 94-95 (1993) (quotation omitted). The defendant does not argue that the State acted in bad faith in losing the charcoal strips, but argues that the trial court erred in finding that the State did not act with culpable negligence.

Prior to trial, the Nashua District Court ordered the State to preserve, among other things, samples of any evidence subjected to physical analysis. Michael Higgins, a forensic analyst hired by the defendant, testified that he received nine sealed containers from the Nashua Fire Marshal's Office so he could conduct independent tests on behalf of the defendant. He stated, however, that the charcoal strip samples from the fire scene were not in the containers. As a result, the defendant could not analyze the physical evidence in the same manner as did the State.

Morris Boudreau, a State forensic analyst, tested the charcoal samples at issue and testified that after his analysis, he placed the charcoal strips in

glass vials and then placed the vials in the containers. He also testified that he has followed this same procedure for preserving fire debris evidence for sixteen years, and has analyzed fire debris thousands of times. Neither Boudreau nor the fire marshal's office could explain what happened to the glass vials in this case.

We have explained that "[c]ulpable negligence is something more than ordinary negligence, mere neglect, or the failure to use ordinary care – it is negligence that is censorious, faulty or blamable." *Giordano*, 138 N.H. at 95. The unexplained loss of evidence may constitute negligence but, without more, will not amount to culpable negligence. *Bruce*, 147 N.H. at 41 (unexplained loss of police photographs not culpable negligence). The defendant contends that there were aggravating circumstances that made the State culpably negligent because there was a district court order to preserve the physical evidence. As a result, she argues that this case is similar to *State v. Michaud*, 146 N.H. 29 (2001). We disagree. Our decision in *Michaud* is distinguishable from the present case first, because the issue of culpable negligence was not addressed in that decision, and second, that case involved not the unexplained loss of evidence, but rather, a situation in which the prosecutor knowingly permitted relevant evidence to be destroyed. *See id.* at 32.

■ The record supports the trial court's finding that the State did not act with culpable negligence. Boudreau testified that he followed the same procedure he always used to store and preserve the physical evidence in this case and that he had no knowledge as to what happened to the glass vials containing the charcoal strips. Nothing in the record indicates more than ordinary negligence. We, therefore, uphold the trial court's finding that the State satisfied its burden that it acted in good faith, without culpable negligence.

While the trial court ruled that the State acted in good faith and without culpable negligence when it lost the charcoal strips, the defendant could still claim relief if she demonstrated that the lost evidence was material to her case and that its loss was prejudicial. *See Giordano*, 138 N.H. at 94. In its order, the trial court noted that the "defendant conceded the difficulty of demonstrating materiality and prejudice and acknowledged the weakness of her argument with respect to th[o]se factors." It concluded that in light of the evidence presented by the defendant, any claim of materiality and prejudice as it relates to the lost charcoal strips was speculative. Because the defendant does not challenge this finding on appeal, we uphold the trial court's decision that the defendant's due process rights were not violated.

*Reversed and remanded.*

BROCK, C.J., concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. While I agree with the court's analysis and conclusion concerning the loss of evidence, I disagree with its conclusion concerning the issue of prosecutorial misconduct. Because the issue was not properly preserved, I would affirm the defendant's conviction, and, therefore, I respectfully dissent.

I agree with the court that the prosecutor's comments were highly improper. Under the circumstances, however, a mistrial was not warranted because a suitable curative instruction would have sufficed. *See State v. Giordano*, 138 N.H. 90, 94 (1993); *cf. State v. Bujnowski*, 130 N.H. 1, 5-6 (1987).

In his closing argument, the prosecutor made comments regarding defense counsel's role, to which defense counsel promptly objected. Following a bench conference, the trial court issued a curative instruction informing the jury that it is not the function of either the prosecutor or defense counsel to obscure the truth, that their job is to seek truth and to represent their clients, and that they were to disregard anything they heard to the contrary. We assume that the jury follows a trial court's curative instructions. *State v. Giordano*, 138 N.H. at 94. The prosecutor refrained from making any further improper remarks following the curative instruction.

I note that the trial court's handling of the prosecutor's conduct here was not optimal. Rather than directly admonishing the prosecutor for his conduct and informing the jury that his statements were improper, the court gave a more generally phrased curative instruction. In addition, the court's initial reaction to defense counsel's objection, asking whether the objection could wait until the prosecutor concluded, may have created an inference that the court did not find the conduct offensive enough to warrant an immediate curative instruction. But, regardless of whether the trial court's curative instructive was sufficient, the State points out that the defendant did not object to the adequacy of the curative instruction and, therefore, the issue is not preserved for appeal. I agree.

Contrary to the defendant's argument, I disagree that this situation is similar to *State v. Boetti*, 142 N.H. 255 (1997), and that it was unnecessary for defense counsel to object following the trial court's instruction. In *Boetti*, defense counsel objected to the prosecutor's remarks during closing argument that defense counsel's strategy did not serve a truth-seeking function, and requested a specific instruction that he had done nothing wrong or unethical. *Boetti*, 142 N.H. at 258. When the trial court informed defense counsel, prior to giving its instruction, that it would

simply instruct the jury to disregard the prosecutor's statements, defense counsel again reiterated his request for a more substantial instruction. *Id.* The court ignored defense counsel's request and instructed the jury to disregard the prosecutor's comments. *Id.* at 258-59. In that case, we concluded that it was not necessary for defense counsel to object again to the court's instruction because it was apparent that it had "conclusively decided to simply instruct the jury to disregard the prosecutor's last remark." *Id.* at 259.

Defense counsel in this case did not engage in the type of colloquy with the trial court such that any further objection to the court's instruction was unnecessary. Here the trial court asked defense counsel what instruction he wanted and then gave its own instruction. Unlike *Boetti*, the court did not first tell defense counsel during the bench conference what instruction it would give, thereby affording counsel a chance to object. Consequently, the trial court had no reason to believe that its instruction was deficient and, therefore, was not given the opportunity to correct any error it may have made.