Rockingham
No. 2012-094

THE STATE OF NEW HAMPSHIRE

v.

WAYNE DORRANCE

Argued: March 14, 2013
Opinion Issued: July 16, 2013

*Michael A. Delaney,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Wayne Dorrance, appeals his conviction by a jury in Superior Court (*Lewis,* J.) for second degree assault on a law enforcement officer, arguing that the State offered insufficient evidence to prove that the officer suffered serious bodily injury. *See* RSA 631:2, I(a) (Supp. 2012). We affirm.

The jury could have found the following. On the evening of June 25, 2010, New Hampshire Fish and Game Department Conservation Officers Christopher McKee and Geoffrey Pushee were on patrol on Pawtuckaway Lake in Nottingham when they observed a boat driven by the defendant traveling at full speed in a "no wake" zone. The officers signaled for the defendant to stop, but he turned his boat around and sped away. McKee later caught up with the defendant under a bridge, identified himself, and told the defendant to stop. In response, the defendant uttered profanities and attempted to back out from under the bridge. McKee was able to maneuver his boat alongside the defendant's boat and announced that he was going to board it. The defendant again directed profanities at McKee, telling McKee that he could not board the boat. As McKee started to board the defendant's boat, he saw the defendant's fist "coming right at [his] face," striking him in the right eye. He arrested the defendant after a struggle.

At trial, McKee testified that he felt "[e]xtreme, extreme pain" after having been punched. By the time he got the defendant's boat back to shore, his eye had swollen shut and he could not see out of it. He testified that his eye remained swollen shut for three to five days, he had blurry vision for about ten to fourteen days thereafter, he missed approximately

one week of work, and he "continued to see an eye doctor after returning" to work because of blurry vision issues.

The defendant was indicted for, among other charges that are not challenged on appeal, second-degree assault, based upon what the indictment alleged were McKee's "protracted vision problems." The defendant moved to dismiss that charge at the close of the State's case, arguing that "no reasonable person could find Officer McKee suffered . . . *protracted* loss of or impairment to the health or of the function of any part of his body." The judge denied his motion, concluding that the evidence presented by the State was sufficient to send the question to the jury.

On appeal, the defendant argues that the State presented insufficient evidence to demonstrate that Officer McKee suffered a serious bodily injury. The controlling statute, RSA 631:2, I(a), provides that a person is guilty of second degree assault if he "[k]nowingly or recklessly causes serious bodily injury to another." "Serious bodily injury" is defined as "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA 625:11, VI (2007). The indictment alleged that the defendant's attack on McKee "caus[ed] protracted vision problems"; our review of his conviction is limited accordingly.

■ To prevail on his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Wilmot*, 163 N.H. 148, 154 (2012). "Whether [the victim's] injuries constituted 'serious bodily injury' is a *question of fact* for the jury to decide." *State v. Scognamiglio*, 150 N.H. 534, 536 (2004) (emphasis added); *see State v. Plaut*, 124 N.H. 813, 813 (1984) (memorandum opinion).

■ ■ The parties advance different views as to what constitutes a "protracted" impairment for the purpose of RSA 625:11, VI. The State points to a decision from Missouri defining protracted as "more than momentary[;] no minimum degree of trauma must be inflicted in order to constitute protracted loss or impairment." *State v. Norwood*, 8 S.W.3d 242, 246 (Mo. Ct. App. 1999). The defendant, on the other hand, argues that the injury must be at least as "serious" as a permanent or severe impairment, and must last "for a long time or longer than expected or usual." (Quotation omitted.) We need not decide between these proffered definitions — when a statutory term is undefined, we ascribe to it its plain and ordinary meaning. *Appeal of Town of Nottingham*, 153 N.H. 539, 553 (2006). A "protract[ed]" impairment is one that is "delay[ed] or prolong[ed] . . . in time." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1826 (un-

abridged ed. 2002). Whether an impairment is protracted is therefore a question of degree, and the role of this court is limited to determining whether a rational jury could have considered McKee's injuries to be delayed or prolonged.

We conclude that the evidence was sufficient to support a finding that McKee suffered a protracted impairment to the function of his eye. *See* RSA 631:2, I(a). Considering the facts recited above in the light most favorable to the State, the jury could have believed McKee had consistently impaired vision for up to nineteen days and, for at least some time thereafter, intermittently impaired vision requiring medical attention. Although our decisions do not shed light on this particular question, injuries of this duration have been held sufficient by appellate courts in other states to demonstrate serious bodily injury. *See, e.g., State v. Meyers,* 145 P.3d 821, 829, 830 (Haw. App. 2006) (a "reasonable mind might fairly conclude" that victim suffered protracted impairment to function of lungs based on evidence of eight fractured ribs causing severe pain and discomfort that began to alleviate after two weeks); *Huerta v. State,* 933 S.W.2d 648, 649 (Tex. Ct. App. 1996) (evidence sufficient to raise jury issue on protracted impairment of a bodily organ when the victim was hit and kicked in the groin, urinated blood as a result, and was unable to return to work as a police officer for several days); *People v. Mohammed,* 557 N.Y.S.2d 35, 36 (App. Div. 1990) (memorandum decision) (victim suffered "protracted impairment of health" based on evidence of "fractured humerus [bone] requiring several weeks of immobilization" (quotation omitted)).

The victim's injuries in this case are also consistent with injuries found by this and other courts to constitute serious bodily injury more generally. In *Scognamiglio,* for example, we concluded that a rational jury could have found the defendant guilty of causing serious bodily injury when the victim had a broken nose, swollen and discolored eyes, clogged breathing passages, and a sinus infection. *Scognamiglio,* 150 N.H. at 537. Similarly, in *State v. Kiluk,* we held that a rational jury could have found the defendant guilty of causing serious bodily injury when the victim had wounds requiring seven stitches and a scratched eyeball resulting in blurred vision. *State v. Kiluk,* 120 N.H. 1, 4 (1980). Out-of-state decisions are also generally in accord. *See, e.g., Coronado v. State,* 654 So. 2d 1267, 1270 (Fla. Dist. Ct. App. 1995) (victim suffered "great bodily harm" based on evidence of "facial fracture, numbness and a great deal of pain around the eye and face"); *People v. Fosselman,* 659 P.2d 1144, 1148 (Cal. 1983) (victim suffered serious bodily injury based on evidence that victim's jaw was broken and wired shut for three weeks after injury); *cf. Feagin v. State,* 731 S.E.2d 778, 780

(Ga. Ct. App. 2012) (victim suffered "serious disfigurement" based on evidence that victim's eye was severely swollen and took "several weeks" to heal).

There may be cases in which the duration of a bodily impairment is so brief that we would be justified in declaring the injury to be non-protracted as a matter of law. Indeed, not only is there no set formula for determining when the effects of an injury linger long enough to constitute serious bodily injury, but that determination may also depend, at least in part, on the nature of the impairment. Here, however, it was within the province of the jury, as the ultimate trier of fact, to find that the injury to McKee's eye constituted a protracted impairment and, thus, serious bodily injury. *Cf. Feagin*, 731 S.E.2d at 780 ("[W]hether a disfigurement is serious is almost always a question for the jury to resolve on a case-by-case basis.").

*Affirmed.*

LYNN and BASSETT, JJ., concurred; DALIANIS, C.J., with whom CONBOY, J., joined, dissented.

DALIANIS, C.J., dissenting. I respectfully dissent. To prevail on his sufficiency of the evidence claim, the defendant, Wayne Dorrance, must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Wilmot*, 163 N.H. 148, 154 (2012). Here, the indictment alleged that the defendant caused serious bodily injury to Officer Christopher McKee, resulting in "protracted vision problems." The majority correctly states that "[w]hether the victim's injuries constituted 'serious bodily injury' is a question of fact for the jury to decide." (Brackets and emphasis omitted.) To reach that question, however, we must first resolve a preliminary issue — the meaning of "protracted" within the serious bodily injury statute. *See* RSA 625:11, VI (2007).

As we have noted on numerous occasions, the interpretation of a statute is *a question of law*, which we decide *de novo*. *See State v. Brooks*, 164 N.H. 272, 291 (2012). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.* We first examine the language used, and, when possible, we ascribe the plain and ordinary meanings to words used. *Ocasio v. Fed. Express Corp.*, 162 N.H. 436, 450 (2011). Nevertheless, we construe statutes in the context of the overall statutory scheme and not in isolation. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Appeal of Hartford Ins. Co.*, 162 N.H. 91, 95 (2011). With

respect to the Criminal Code, we construe its provisions "according to the fair import of their terms and to promote justice." RSA 625:3 (2007).

To "protract" is "to draw out or lengthen in time or space." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1826 (unabridged ed. 2002). The common meaning of "protracted" is "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987). Consequently, although the legislature did not delimit the duration of a "protracted" impairment necessary to support a finding of "serious bodily injury," it must have intended that "protracted" connote a period of time of prolonged duration.

The State contends that "protracted" must have been intended to mean something different from "permanent" or "severe," the other two variants of serious bodily injury, because "the legislature is presumed not to have used superfluous or redundant words." *Pennelli v. Town of Pelham*, 148 N.H. 365, 367-68 (2002) (quotation omitted). I do not disagree. Nevertheless, "words are known by the company they keep." *Phaneuf Funeral Home v. Little Giant Pump Co.*, 163 N.H. 727, 734 (2012). "Permanent" and "severe" describe conditions that are unending or very harsh.

The commentary to the Model Penal Code supports this interpretation. *See State v. Donohue*, 150 N.H. 180, 183 (2003) (recognizing that "our Criminal Code is largely derived from the Model Penal Code"). In discussing the distinction between bodily injury and serious bodily injury, comment 3 differentiates the "very broad coverage" achieved under the bodily injury statute from "the extreme gravity of injury" punished under the serious bodily injury statute. MODEL PENAL CODE § 211.1 cmt. 3, at 188 (1980). Accordingly, "we can conclude that, like the drafters of the Model Penal Code, [our legislature] intended to describe 'drastic harms' and injuries of 'extreme gravity' " when it envisioned "serious bodily injury." *State v. George*, 79 P.3d 1050, 1056 (Ariz. Ct. App. 2003).

This conclusion is consistent with cases from other jurisdictions having similar statutory language. Those courts have held that injuries that did not require stitches, inpatient hospitalization, surgery, or follow-up medical treatment did not constitute "protracted loss or impairment" as a matter of law. *E.g.*, *id.* (no protracted impairment as matter of law where mobility of arm affected for two days following shooting); *State v. Rowlett*, No. M2011-00485-CCA-R3-CD, 2013 WL 749502, at *16 (Tenn. Crim. App. Feb. 26, 2013) (loss of sight for no more than one night was not protracted); *Moore*, 739 S.W.2d at 351, 352 (mother's testimony that, as a result of stab wound to back, complainant was bedridden and that it was at least a week before he could "really go out and see people" was insufficient, as a matter of law, to establish protracted impairment (quotation omitted)); *Villarreal*

*v. State*, 716 S.W.2d 651, 652 (Tex. Ct. App. 1986) (evidence that victim's ribs were fractured and he could not raise his arms for two weeks was insufficient as matter of law to establish protracted impairment); *Williams v. State*, 696 S.W.2d 896, 897 (Tex. Crim. App. 1985) (bullet wounds did not require surgery); *Kelly v. State*, 153 P.3d 926, 930 (Wyo. 2007) (victim left with scar after being hit on head with iron grate from stove top).

Here, McKee testified that he felt immediate pain, that his eye was swollen "almost shut" for three to five days, and that he had blurry vision for ten to fourteen days thereafter. Although he testified that he was transported to the hospital by ambulance after the incident, he provided no indication of what treatment he received for his eye. Nor did he offer any testimony that he experienced any specific functional limitations because of the injury. Although he testified to having blurry vision, he never asserted that he was unable to see at a level sufficient to conduct his daily affairs. In short, the record lacks evidence that McKee suffered consequences for a "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending" period of time following the punch to his eye. *Moore*, 739 S.W.2d at 352. Consequently, in my view, his impairment was not "protracted" as a matter of law and, therefore, did not constitute "serious bodily injury" as charged in the indictment.

The legislature is, of course, free to increase the criminal penalties for any person convicted of causing any bodily injury to a law enforcement officer. However, since I question whether the legislature intended an assault resulting in a limited period of vision impairment such as McKee suffered in this case to be penalized as "serious bodily injury," and because I am concerned about charging decisions that might be made in the future as a consequence of the majority's opinion, I respectfully dissent.

CONBOY, J., joins in the dissent.