NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
Nos.  2014-0370
        2016-0096


THE STATE OF NEW HAMPSHIRE

v.

JASON N. CANDELLO

Argued:  February 16, 2017
Opinion Issued:  July 7, 2017

Joseph A. Foster, attorney general (Sean P. Gill, assistant attorney general, on the brief and orally), for the State.


Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J.  The defendant, Jason N. Candello, appeals his conviction by a jury for second-degree assault.  See RSA 631:2, I (2016).  He argues that the State offered insufficient evidence to prove that the victim suffered serious bodily injury.  He also appeals the Trial Court's (Kissinger, J.) denial of his motion for a new trial based upon ineffective assistance of counsel.  He contends that his trial counsel (hereinafter referred to as trial counsel or defense counsel), who is not his appellate counsel, rendered constitutionally ineffective assistance by allowing the defendant to make the decision to admit

certain audio recordings and by failing to cross-examine the victim regarding prior inconsistent statements. We affirm.

I. Brief Procedural History

The defendant was indicted on one count of second-degree assault against the victim, his father, and on one count of being a felon in possession of a deadly weapon. The second-degree assault indictment alleged that the defendant recklessly "caused serious bodily injury to [the victim] in the form of broken ribs and splenic laceration." At the close of the State's case, the defendant moved to dismiss all of the charges. The trial court denied his motion, and the jury convicted him of the second-degree assault charge and acquitted him of the felon in possession of a deadly weapon charge.

Thereafter, the defendant directly appealed his second-degree assault conviction. After doing so, he filed a motion for new trial in the trial court based upon alleged ineffective assistance of counsel. Following a hearing, the trial court denied his motion. The defendant then filed a discretionary appeal of that ruling. We consolidated the defendant's direct and discretionary appeals.

II. Direct Appeal

We first address the defendant's direct appeal of his conviction for second-degree assault, in which he argues that the State presented insufficient evidence to demonstrate that the victim suffered serious bodily injury. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. State v. Cable, 168 N.H. 673, 677 (2016).

To prevail upon his challenge to the sufficiency of the evidence, the defendant must establish that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Dorrance, 165 N.H. 162, 164 (2013). "Whether the victim's injuries constituted serious bodily injury is a question of fact for the jury to decide." Id. (quotations, brackets, and emphasis omitted).

The controlling statute, RSA 631:2, I(a), provides that a person is guilty of second-degree assault if he "[k]nowingly or recklessly causes serious bodily injury to another." "'Serious bodily injury' means any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA 625:11, VI (2016). In this case, the indictment alleged that the defendant recklessly "caused serious bodily injury to [the victim] in the form of broken ribs and splenic laceration."

2

The defendant contends that there was insufficient evidence that the victim suffered either "severe or protracted impairment." He maintains that, although the victim "received minimal medical treatment and experienced some pain, there was no evidence that the pain impaired his physical abilities for a protracted period of time or that any impairment was severe." We disagree that there was insufficient evidence from which a rational trier of fact could conclude that the victim's injuries were severe.

The jury heard testimony from the victim that the defendant "punch[ed]" the victim "[q]uite hard" eleven or twelve times. The victim testified that the defendant "hit me two or three, four times in the head, [a] couple [of times] in the shoulders, around the neck area, and then he went down my ribcage, hitting both sides." He stated that after the assault his rib cage was sore and that he "continued to work the next week" until he "got up one morning" and was in such pain that he "couldn't make it to the end of the bed." The victim testified that he then telephoned a friend "for help" and went to the emergency room, where it was discovered that he had a ruptured spleen and fractured ribs. The victim was subsequently admitted to the hospital. The investigating officer testified that when he spoke with the victim, the victim was in the "intensive-care unit."

The jury also heard the trauma surgeon testify that he was "called by the emergency medicine physician who," after seeing the victim, "felt that he should be hospitalized." The surgeon testified that the victim had "two rib fractures," "bruising over his left flank," and "a grade 4 splenic laceration, which is an injury to the spleen, . . . significant enough to potentially cause . . . [e]nough blood loss to require an operation." He stated that the victim's red blood cell count was "substantially lower than normal."

The surgeon explained that the victim suffered from a "subcapsular splenic hematoma," which means that "the spleen [had] received injury to its structure. And in this case, a large amount of blood [had] escaped from the spleen to an area underneath what [is called] the splenic capsule or outside lining of the spleen." He stated that "the bleeding from the spleen actually caused the spleen to double in size. There was also a fair amount of blood inside his abdominal cavity, so it was -- you know -- [a] pretty big injury." He stated that a spleen laceration "can be severe" and, "[i]n the [victim's case,] there was the potential that he would have to go to the operating room and have his spleen removed." He testified that the victim was admitted to the hospital for "three days" and treated with "[r]est, observation, [and a blood] transfusion." He stated that it was "[u]nknown" whether the victim would have died without the blood transfusion, but, in his opinion, "probably not."

Viewing this evidence and all inferences to be drawn from it in the light most favorable to the State, we hold that a rational juror could have found, beyond a reasonable doubt, that the defendant caused the victim to suffer

3

serious bodily injury.  See State v. Scognamiglio, 150 N.H. 534, 537 (2004) (holding that rational juror could have found defendant caused serious bodily injury where victim had broken nose, swollen discolored eyes, clogged breathing passages, and sinus infection); cf. People v. Daniels, 240 P.3d 409, 410, 412 (Colo. App. 2009) (Graham, J., specially concurring) (concluding that victim suffered serious bodily injury where "victim suffered a grade three laceration or rupture of the spleen and was bleeding internally").  A rational juror could have found that two fractured ribs along with a grade four laceration to the spleen, which required a three-day hospital stay and a blood transfusion, constitute "severe . . . impairment to the health or of the function of any part of the body."  RSA 625:11, VI.

Because we conclude that the evidence was sufficient to support a finding that the victim's injuries constituted a "severe" impairment, we need not address the defendant's argument that there was insufficient evidence that the victim's injuries constituted a "protracted" impairment.  See RSA 625:11, VI; cf. State v. MacArthur, 138 N.H. 597, 600 (1994) (explaining that RSA 625:11, VI does not require permanent injury inasmuch as it defines "serious bodily injury" in the disjunctive:  "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body" (quotations omitted)).  Thus, we hold that the State presented sufficient evidence to support a finding of serious bodily injury.

III.  Discretionary Appeal

We next consider the defendant's discretionary appeal of the trial court's denial of his motion for a new trial based upon alleged ineffective assistance of counsel.  The defendant's claim of ineffective assistance of counsel rests upon both the State and Federal Constitutions.  See N.H. CONST. pt. I., art. 15; U.S. CONST. amends. VI, XIV.  We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

Both the State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel.  Cable, 168 N.H. at 680; see Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail upon his claim, the defendant must demonstrate, "first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case."  Cable, 168 N.H. at 680 (quotation omitted).  A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective.  State v. Collins, 166 N.H. 210, 212 (2014).

To satisfy the first prong of the test, the performance prong, the defendant must show that trial counsel's representation fell below an objective standard of reasonableness.  Id.  To meet this prong of the test, the defendant

4

must show that trial counsel made such egregious errors that he failed to function as the counsel the State Constitution guarantees. State v. Thompson, 161 N.H. 507, 529 (2011). We afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. Id. The defendant must overcome the presumption that trial counsel reasonably adopted his trial strategy. Id. Accordingly, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. (quotation and brackets omitted); see Strickland, 466 U.S. at 689.

"To meet the second prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Cable, 168 N.H. at 681 (quotations and citations omitted). "In making this determination, we consider the totality of the evidence presented at trial." Collins, 166 N.H. at 213 (quotation omitted).

"Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact." Cable, 168 N.H. at 681 (quotation omitted). "Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo." Id. (quotation omitted).

The defendant argues that his trial counsel rendered ineffective assistance in two respects. First, he asserts that trial counsel's representation was constitutionally defective because counsel allowed the defendant to make the decision to admit audio recordings of two telephone calls between the defendant and his mother recorded when the defendant was in jail. Second, the defendant contends that trial counsel was ineffective because he did not cross-examine the victim regarding certain prior inconsistent statements. We address each argument in turn.

### A. Admission of Audio Recordings

The defendant first contends that trial counsel rendered ineffective assistance by allowing him to make the decision to admit two audio recorded telephone calls. During trial, the State questioned one of the law enforcement officers involved in the case about certain telephone calls between the defendant and his mother that occurred while the defendant was in jail following the assault. The State played a portion of one of the recorded calls in which the defendant stated, "I told you I'm not gonna let him yell in my face the rest of my life." The State asked the detective whether the defendant was

referring to his father in the statement.  Defense counsel objected, and the following exchange took place:

> [Defense counsel]:  I know that the State's just trying to save time, but I don't think it's proper for him to base an opinion -- you know, give his opinion to the jury about what this is about or, you know, what it was in regards to.  Want to play the whole tape, then we play the whole tape.

> [Prosecutor]:  If he wants us to play the whole tape, I will play both tapes.  There's a lot in there that I assume he doesn't want in, but if he wants the whole tape, I'll play the whole tape.

> THE COURT:  Why don't you talk to [the defendant], your client, and see if he wants -- I think your objection is well founded.  The question is, is that really what you want to have happen.  So -- if it is, then I'm going to grant that request, but I haven't heard the -- I haven't heard anything more than this, so I don't know -- I assume you know what's -- what -- the remainder that's on there.  So if that's really your request, then -- then, I just want to make sure that that's your client's specific request that we do that.

> [Defense counsel]:  Yeah, I'll stop.

> THE COURT:  Thank you.

> [Defense counsel]:  Can I have a minute?

> THE COURT:  Absolutely.

(Pause)

> [Defense counsel]:  <u>Yes, he does.  He would prefer playing the entire conversation</u>.

> THE COURT:  Okay.  So really the request is that -- what brought us here is the specific objection to the last question.  Do you want to press that question?

> [Prosecutor]:  Let me ask this.  Are we going to play the full two phone calls?

> [Defense counsel]:  Most likely, yeah.  <u>That's what he wants</u>.

> . . . .

THE COURT: I think -- I think -- you're saying it's important from your perspective that the context be put on; is that your request --

[Defense counsel]: <u>That's my client's position, is that he would prefer that the entirety be played</u>.

THE COURT: All right. We'll do that. We'll do that.

(Emphases added.)

Thereafter the State played the two audio recordings of the telephone conversations between the defendant and his mother. The recordings included statements by the defendant referencing the assault for which he was being tried and his rationale for the assault, as well as his mental health issues and potential drug use. The recordings also included threatening and homophobic statements made by the defendant. In addition, during the telephone calls, the defendant made derogatory remarks about his father.

Following the hearing on the defendant's motion for a new trial, the trial court found that "playing the otherwise inadmissible recording was very damaging to [the defendant]. If [trial counsel], acting alone, had introduced the full recording as evidence, it would fall below the established standards for reasonable attorney conduct." However, the court found that

> [t]hat is not what happened here. [Trial counsel] conferred with [the defendant] after the State offered to play the full recording. The record is clear that [the defendant] decided to play the full recording, even after the Court asked again if that was really what the defense wanted to do. The question is whether [trial counsel's] conduct in following his client's specific request fell below the established standard of reasonableness.

The court concluded that trial counsel "was not required to override [the defendant's] wish to have the full recording played in order to remain objectively reasonable as counsel." Thus, the court ruled that the defendant had failed to prove that his trial counsel's conduct fell below an objective standard of reasonableness.

The defendant contends that the trial "court erred in finding that counsel's performance did not fall below the established standards for reasonable attorney conduct" because, here, "counsel did not adequately advise [the defendant] before allowing him to make the decision about whether the full recordings would be played," nor did counsel "seek to mitigate the damage from the full recordings by asking the court for an instruction limiting the jury's use of the statements and forbidding their use as character or propensity

7

evidence."  Rather, the defendant claims that trial "counsel blindly followed [his] wish that the calls be heard in full."  (Quotation omitted.)  In doing so, the defendant maintains that trial counsel "abdicated his responsibility to make a critical strategic decision to his uninformed and uncounseled client" and, therefore, "[f]or this decision, [the defendant] essentially represented himself."

We recognize that the preferable course in a challenge based upon ineffective assistance of counsel is to require the defendant to prove as a threshold matter that the alleged error by counsel prejudiced his case.  State v. Wisowaty, 137 N.H. 298, 302 (1993).  As we have explained, "[i]f the defendant cannot demonstrate such prejudice, we need not even decide whether counsel's performance fell below the standard of reasonable competence."  Id. (quotation omitted).  We have also recognized, however, that courts have the flexibility to adopt the analytic approach that promotes clarity and ease of review.  Id.  Here, we find it helpful to address the merits of the defendant's argument, and consider the issue of prejudice only if there is a legitimate question as to whether counsel's conduct was indeed deficient.  See id.

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy."  Florida v. Nixon, 543 U.S. 175, 187 (2004).  "That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision."  Id. (quotation omitted).  In that respect, we agree with the defendant that "[t]he decision of whether to object to inadmissible evidence is an aspect of trial strategy that counsel may make on behalf of a defendant."  State v. Rawnsley, 167 N.H. 8, 13 (2014).  Nonetheless, we do not believe that this means that counsel is required to ignore the defendant's request to allow the admission of such evidence.  As the Supreme Court stated in Strickland, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  Strickland, 466 U.S. at 691.  This is so because "trial counsel, while held to a standard of 'reasonable effectiveness,' is still only an assistant to the defendant and not the master of the defense."  Mulligan v. Kemp, 771 F.2d 1436, 1441 (11th Cir. 1985).

"Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client."  Id.  Accordingly, "if [counsel] is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed."  Id. at 1442; see also United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before him,

8

agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel."); State v. Brown, 160 N.H. 408, 416 (2010) (concluding that trial counsel did not act unreasonably where "counsel consulted with his client and they chose to pursue an all-or-nothing strategy, eliminating the possibility of a compromise verdict").

In this case, trial counsel testified at the hearing on the defendant's motion for a new trial that he recalled having "a brief discussion [with the defendant] about whether or not . . . playing the entire phone call was a good idea or not." Counsel stated that, in his opinion, "it was not," however, he believed "that [the defendant] wanted to play the entire tape." He testified that he listened to the tapes prior to trial and that he believed "that [the defendant] said that he had listened to them." He agreed with the prosecutor that, although he had reservations about playing the recordings, he let the defendant "ultimately make the call." He explained:

> I think in my opinion and my experience and training that there's times during a trial or during any part of a case when you make certain strategic and tactical decisions. And whenever possible you want to have your client involved in the conversation and in the decision.

> And ultimately it's my opinion that I err to the side of doing what my client wishes to do so long as there's been, you know, kind of full disclosure and an opportunity to, you know, to have a conversation about it, to let him know the merits and demerits of doing so, of taking any particular tactic or strategy.

Trial counsel later agreed with the counsel representing the defendant at the hearing that, if it had been his choice, he would not have played the entire recordings, but that he consulted with the defendant and let him make the decision. He further stated:

> If [the defendant] had told me that he did not know what was on [the recordings], that I would not have -- I don't believe that I would have had them played. I would have, you know, asked for a recess where we could have listened to them again. That's what typically would have happened, but I don't remember.

The defendant did not testify at the hearing.

Under these circumstances, we cannot say that counsel's decision to allow the defendant to make the decision to admit the recordings was so egregious that he failed to function as the counsel the State Constitution guarantees. See Cable, 168 N.H. at 680; United States v. Mathis, No. CRIM. A.97-334-04(CK, Civ.A.02-095(CKK), 2005 WL 692082, at *9 (D.D.C. 2005)

9

("Circuit courts confronted with cases like this one at bar have also refused to characterize a tactic pursued by an attorney at her client's behest as 'unreasonable.'"); see also Parker v. State, 510 So. 2d 281, 287 (Ala. Crim. App. 1987) (concluding that, where defendant had participated in decision to not submit jury instruction on lesser-included offense, court could not say that counsel's decisions were unreasonable and "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" (quotation and ellipsis omitted)).  On the record before us, we cannot conclude, as the defendant suggests, that counsel abdicated his role by failing to "adequately advise [the defendant] before allowing him to make the decision about whether the full recordings would be played."  Contrary to the defendant's suggestion, this is not a case where the defendant merely acquiesced to a decision made by his trial counsel.  Rather, trial counsel's uncontradicted testimony at the hearing supports a finding that counsel did, in fact, consult with the defendant regarding whether it was a good idea to play the recordings and that the defendant chose to admit the recordings.  See Cable, 168 N.H. at 683-84 (stating that court could not conclude from record that defense counsel's conduct fell below an objective standard of reasonableness where defense counsel had, in fact, done what defendant claimed he had not done).  Moreover, counsel testified that he believed the defendant said that he had listened to the recordings and, although counsel could not recall, he stated that, if the defendant had told him that he did not know what was on the recordings, counsel did not believe he would have had them played to the jury, and he would have asked for a recess to allow the defendant to listen to the recordings.

Even assuming, as the defendant contends, that, at trial, "counsel [initially] suggested that the full recording be played before he was given an opportunity to consult with [the defendant]," the record shows that counsel thereafter did consult with the defendant and that the defendant's choice was to play the recordings.  "Cutting through the smoke, it is apparent that we are being asked to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do.  That argument answers itself." United States v. Masat, 896 F.2d 88, 92 (5th Cir. 1990).

Moreover, it is noteworthy that, at trial, trial counsel utilized certain statements made by the defendant in one of the recordings in his cross-examination of a detective involved in the case.  Further, in his closing argument, trial counsel relied upon one of the statements made by the defendant in the same recording to argue that the defendant should be acquitted of the felon in possession of a deadly weapon charge.  The jury thereafter acquitted the defendant of that charge.  Thus, although the decision to admit the recordings introduced detrimental evidence, trial counsel utilized the recordings as part of his trial strategy.

10

Based upon the foregoing, we hold that the defendant has failed to overcome the presumption that, under the circumstances, his trial counsel acted reasonably. See Cable, 168 N.H. at 680; see also Mathis, 2005 WL 692082, at *9 (determining that counsel did not act "outside the bounds of reasonable professional assistance when she allowed Defendant's informed opinion to 'trump' her own with respect to calling" a witness).

### B. Inconsistent Statements

The defendant next argues that his trial counsel was ineffective for failing to cross-examine the victim about prior inconsistent statements that the victim made regarding the assault. He contends that "counsel's choice to not question [the victim] about his prior statements appears to have been the result of a misunderstanding of the law" and, therefore, his performance was objectively unreasonable. He further maintains that counsel's failure to cross-examine the victim prejudiced his case because the victim was "the State's key witness" and "[e]ven minor inconsistencies in his account of the assault would have affected the jury's" decision.

During trial, defense counsel asked the victim whether he remembered speaking to an investigator. The State objected, arguing that the question "call[ed] for hearsay." Defense counsel informed the court that he intended to point out inconsistent statements. The trial court ruled that "if [the victim] said things to [the investigator] inconsistent with his testimony [at trial], it's proper to examine him about those things." Defense counsel then asked to confer with the defendant, and, after he did so, he withdrew "from that line of questioning."

Defense counsel later called the investigator as a witness. When counsel began asking about statements that the victim made to the investigator about the assault, the State objected. The State argued that there was an insufficient foundation for the statements to be introduced because the victim had not been given the opportunity to address the statements and, therefore, the statements would be hearsay. The trial court agreed, and sustained the State's objection because the victim "was not asked about his statements to this investigator." Defense counsel then sought to recall the victim, but because the State had excused him and he was no longer under subpoena, the court denied his request.

In his request for a new trial, the defendant argued that trial counsel was ineffective because he failed to question the victim about inconsistent statements the victim allegedly made regarding the location of the assault and whether the victim fell to the floor during the assault. At the hearing on the defendant's motion for a new trial, defense counsel could not recall why he withdrew from questioning the victim about his statements to the investigator and whether it resulted from his conversation with the defendant. He agreed

11

with the prosecutor, however, that the victim's testimony was not, in fact, inconsistent with respect to whether he fell to the floor during the assault. He further recalled the layout of the victim's home in which the assault occurred.

The trial court found that "[t]here [was] no reasonable probability that [trial counsel's] decision to not cross-examine [the victim] either initially or have him available for recall would have changed the outcome." Thus, the court found that trial counsel's decision not to cross-examine the victim regarding his allegedly inconsistent statements did not prejudice the outcome of the trial. We agree.

At trial, the victim testified that, on the day of the assault, "I was in my room with the door closed . . . and I could hear hollering and screaming going on. I could tell it was [the defendant] on the phone." He stated that he "opened the door and looked down the hall . . . [a]nd [the defendant] saw me looking down the hall and slammed the phone on the floor and came down the hall and said, 'I'll teach you to look at me,' intimidatingly, and commenced to beat me up." He explained that the defendant "towered over me. I was on the corner of the bed, standing, and he got above me . . . and he hit me a few times in my head, started on my shoulders and worked down my rib cage." He stated that when the defendant stopped beating him, "I . . . was on my knees" and the defendant then "left the room."

The investigator reported that the victim described the events as follows:

[The victim] said he was in his bedroom at one end of the kitchen in his home. He said the door was closed. He said he heard [the defendant] hollering and screaming in the kitchen. . . .

[The victim] said he opened the door to his bedroom and looked down the hall. He said he did not say a word when [the defendant] threw down the phone and charged at him, yelling, "I'll teach you to look at me that way!" [The victim] said [the defendant] started to pound him in the head and then worked his way down to his shoulders, chest and abdomen when he covered his head and fell to the floor.

Based upon the record before us, we agree with the trial court that

[t]he location details do not go to an element of second degree assault and, due to the layout of the home, slight differences in memory could result in these differences in the location inside or outside of the bedroom. The details about whether [the victim] was standing or on the floor may reasonably refer to different moments and may not be inconsistent at all. The difference in the details of

12

his testimony [did] not affect [the victim's] credibility to such an extent that confidence in the outcome is undermined.

Accordingly, we conclude that the defendant has failed to establish that there is a reasonable probability that, but for counsel's alleged errors, the result of the trial would have been different. See Cable, 168 N.H. at 681.

### C. Conclusion

For all of these reasons, we conclude that the defendant has failed to establish that he received constitutionally defective assistance of counsel. "Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both constitutions, necessarily, we reach the same result under the Federal Constitution as we do under the State Constitution." Id. at 689 (quotation omitted); see also Strickland, 466 U.S. at 687.

Finally, any issues raised in the defendant's notices of appeal, but not briefed, are deemed waived. See State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred; CONBOY, J., retired, specially assigned under RSA 490:3, concurred.