NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Nos.  2014-0163
      2015-0025


THE STATE OF NEW HAMPSHIRE

v.

ERIC R. CABLE

Argued:  February 10, 2016
Opinion Issued:  April 1, 2016


Joseph A. Foster, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.


Douglas, Leonard & Garvey, P.C., of Concord (Richard J. Lehmann on the brief and orally), for the defendant.


DALIANIS, C.J.  Following a jury trial in Superior Court (Wageling, J.), the defendant, Eric R. Cable, appeals his conviction for negligent homicide – driving under the influence of intoxicating liquor (DUI), see RSA 630:3, II (2007), and the trial court's denial of his motion for a new trial based upon ineffective assistance of counsel.  On appeal, he argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he caused the victim's death and that his trial counsel rendered constitutionally ineffective assistance by failing to object to the admission of certain evidence and to certain

statements by the prosecutor in his opening statement and closing argument. We affirm.

I.  Brief Procedural History

The relevant facts follow.  In April 2013, a grand jury indicted the defendant on alternate counts of negligent homicide.  See RSA 630:3, I (2007), II; see also State v. Wong, 125 N.H. 610, 618-20 (1984) (explaining that, under RSA 630:3, I, II, the culpability requirement of negligent homicide may be satisfied either by showing that a person caused the death of another negligently or by establishing that the person caused the death in the course of driving while under the influence).

The first count alleged that, on or about July 14, 2012, the defendant committed the crime of negligent homicide – DUI when he "operat[ed] a powerboat on Northwood Lake" while under the influence of intoxicating liquor and that, as a consequence of being under the influence, he caused the death of the victim "in that, while [the victim] was riding on the gunwales or straddling the bow" of the boat, the defendant "maneuvered said boat in a manner that resulted in [the victim] falling overboard and being struck by the boat, drive and spinning propeller."  See RSA 630:3, II.

The second count alleged that the defendant committed the crime of negligent homicide on or about July 14, 2012, when he "negligently[ ] caused the death of [the victim]" by allowing him "to ride on the gunwales or straddle the bow" when the defendant "executed a turning maneuver striking the wake of another boat, resulting in [the victim] falling overboard and being struck by the boat, drive and spinning propeller."  See RSA 630:3, I.

A jury convicted the defendant on both counts.  However, the State nolle prossed the second count, and the trial court sentenced the defendant only for the first count (negligent homicide – DUI).  In addition, the trial court found the defendant guilty of two violation-level offenses:  (1) failure to display a proper vessel number as part of the registration process, see RSA 270-E:8 (2010); and (2) failure to obtain a boater safety education certificate, see RSA 270-D:10 (2010).

Thereafter, the defendant filed a direct appeal of his negligent homicide – DUI conviction.  After doing so, he filed in the trial court a motion for a new trial based upon ineffective assistance of counsel.  The defendant has not provided a transcript of any hearing that might have been held on that motion. At oral argument, the State represented, and the defendant did not dispute, that the trial court did not hold an evidentiary hearing on the motion for a new trial.  The record does not establish that the defendant ever requested such a hearing.

The trial court denied the defendant's motion, and his discretionary appeal of the trial court's denial followed. We consolidated the defendant's direct and discretionary appeals.

## II. Direct Appeal

We first address the defendant's direct appeal of his negligent homicide – DUI conviction in which he argues that the evidence was insufficient to prove, beyond a reasonable doubt, that his operation of the boat while under the influence of intoxicating liquor caused the victim's death. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. State v. Collyns, 166 N.H. 514, 517 (2014).

To prevail upon a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. Id. In such a challenge, "we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Zubhuza, 166 N.H. 125, 128 (2014) (quotation omitted).

To convict the defendant of negligent homicide – DUI, the State was required to prove, beyond a reasonable doubt, that: (1) the defendant was under the influence of intoxicating liquor; (2) when he operated a propelled vehicle; and (3) caused the death of another. RSA 630:3, II. At trial, the defendant conceded that he operated a propelled vehicle within the meaning of the statute. He also stipulated that the victim died "by drowning after receiving blunt penetrating injuries to his head, neck and chest as a result of being struck by the boat[,] drive and spinning propeller of the boat in which he had been a passenger." Additionally, for the purposes of this appeal, the defendant does not contest the sufficiency of the evidence that he was under the influence of intoxicating liquor when he operated the boat. Thus, the only issue for us to consider is whether the defendant's impairment caused the victim's death. See State v. Whittaker, 158 N.H. 762, 766 (2009); see also Wong, 125 N.H. at 620 (to sustain a conviction for negligent homicide – DUI, the State must establish a causal connection between the person's driving under the influence, the subsequent collision, and the resulting death).

Although the defendant refers to the standard we apply when evidence to prove an element is solely circumstantial, see State v. Germain, 165 N.H. 350, 361 (2013), that standard does not apply here because the evidence of causation was both direct and circumstantial, see State v. Saunders, 164 N.H. 342, 349-52 (2012). Based upon our review of the evidence as a whole and all reasonable inferences therefrom, viewed in the light most favorable to the

3

State, we conclude that it was sufficient to allow a rational trier of fact to find that the defendant's impairment caused the victim's death.

The jury viewed the boat. Also, the jury heard from multiple witnesses that, before falling overboard, the victim had been sitting either on the bow or the gunwales of the boat. The jury also heard testimony that although "bow rider[s]," like the defendant's boat, are "common" in New Hampshire, it is "not commonplace" for passengers of such boats to fall overboard. The jury heard as well, from multiple witnesses, that the victim fell overboard when the defendant, operating the boat at approximately 20 miles per hour, turned it into one or more waves. In a written statement he gave at the scene, the defendant stated that the victim "fell off the front right side of the boat" when the defendant "turned around and hit a wave." On the evening of the incident, the defendant told a Northwood Lake resident that his "friend was sitting on the bow of the boat with his legs over, and they hit a wave and he got dragged into the water." (Quotation omitted.) At trial, the defendant testified that, when he turned the boat, it "went over some small waves," which made "the boat . . . pitch and yaw" and caused the victim to lose his balance and fall overboard.

The jury also heard that, on the afternoon of the incident, before the victim fell to his death, the defendant had been drinking alcohol. There was evidence that there were more than 100 alcoholic beverage containers on the boat, 89 of which were empty. One witness described the defendant as "definitely under the influence," becoming "sloppy" and "a little wild" as the day wore on. She estimated that both the defendant and the victim had had more than eight alcoholic drinks over the course of approximately three and one-half hours. A criminal toxicology expert estimated that, at the time of the incident, the defendant's blood alcohol concentration was .133. See RSA 265-A:2, II (2014) (making it unlawful to operate a boat with a blood alcohol concentration of .08 or more).

Further, Joshua Dirth, a marine patrol sergeant, testified that it was unlawful for a passenger to sit on the gunwales or bow while a motorboat is being operated. See RSA 270-D:7 (2010) (providing that "[n]o person shall operate a motorboat or ride as a passenger in a motorboat while sitting on either the starboard or port gunwales or the transom, and no person shall straddle the bow while the motorboat is in operation underway"). Dirth also testified that, had he observed the defendant operating the boat with the victim seated on the bow or gunwales, he would have stopped the boat and charged the defendant with misdemeanor careless and negligent operation. See RSA 270:29-a (2010) (providing that "[a]ny person who shall operate a power boat upon any waters of the state in a careless and negligent manner or so that the lives and safety of the public are endangered shall be guilty of a misdemeanor").

4

Based upon all of the evidence, a rational trier of fact could have reasonably inferred that the defendant's impairment caused him to allow the victim to sit on the bow or gunwales, even though it was unlawful for the victim to do so. See RSA 270-D:7. A rational trier of fact could also have reasonably found that the defendant's impairment caused him to turn the boat through a wave while the victim was so sitting. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, we are unable to conclude, as a matter of law, that no rational trier of fact could have found, beyond a reasonable doubt, that the defendant's impairment caused the victim's death. See Whittaker, 158 N.H. at 766.

## III. Discretionary Appeal

We next consider the defendant's discretionary appeal of the trial court's denial of his motion for a new trial based upon ineffective assistance of counsel. The defendant's claim of ineffective assistance rests upon both the State and Federal Constitutions. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Both the State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. State v. Thompson, 161 N.H. 507, 528 (2011); see Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail upon his claim, the defendant must demonstrate, "first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case." State v. Hall, 160 N.H. 581, 584 (2010) (quotation omitted); see Strickland, 466 U.S. at 687.

"To meet the first prong of this test, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Thompson, 161 N.H. at 528 (quotation omitted); see Strickland, 466 U.S. at 688. "We judge the reasonableness of counsel's conduct based upon the facts and circumstances of that particular case, viewed from the time of that conduct." Hall, 160 N.H. at 584; see Strickland, 466 U.S. at 690. As we have explained:

> Judicial scrutiny of counsel's performance must be highly deferential. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

5

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Hall, 160 N.H. at 584-85 (quotation omitted). The strong presumption that counsel's conduct is objectively reasonable "has particular force" in this case because, without an evidentiary hearing on the defendant's ineffective-assistance claim, we have "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (quotation omitted). Because "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms[,] [t]o establish that his trial attorney's performance fell below this standard, the defendant has to show that no competent lawyer" would have engaged in the conduct of which he accuses his trial counsel. Whittaker, 158 N.H. at 768-69 (quotations and citation omitted).

"To meet the second prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Thompson, 161 N.H. at 528 (quotation omitted); see Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Thompson, 161 N.H. at 528 (quotation omitted); see Strickland, 466 U.S. at 694. "The prejudice analysis considers the totality of the evidence presented at trial." State v. Kepple, 155 N.H. 267, 270 (2007).

"Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact." Hall, 160 N.H. at 585. "Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo." Id. "On appeal, when we determine that a defendant has failed to meet either prong of the test, we need not consider the other one." Kepple, 155 N.H. at 270.

The defendant argues that his trial counsel was ineffective because he failed to object to evidence that the defendant: (1) violated New Hampshire boating laws by operating the boat while the victim was seated on the bow or gunwales; (2) did not have a boating license; (3) had not taken a boater safety course; (4) did not display the correct vessel number on his boat; and (5) had driven the boat earlier that day with too many people on board. He also argues that his trial counsel was ineffective for failing to object to the prosecutor's allegedly improper comments in his opening statement and closing argument. We examine each allegation in turn.

6

A.  Evidence that the Defendant Unlawfully Operated the Boat while the Victim was Seated on the Bow or Gunwales

The defendant first contends that his trial counsel rendered ineffective assistance by failing to object to the following testimony by Dirth on direct examination:

Q  Okay.  Where that person is seated at the far left there in the front of the boat, is a [sic] legal to operator [sic] boat in New Hampshire for somebody sitting up there?

A  No, it's not.

Q  Okay.  Where is the only legal position for people to be seated up in that boat, upfront there?

A  In a boat of this configuration, it would be anywhere where there actually is a seat, itself, so in the interior of the boat.

Q  How about if somebody wasn't seated in the seat, but kind of leaning up with their butt on any of the railings on the sides here, is that legal?

A  No.

Defense counsel objected to this testimony:

[DEFENSE COUNSEL]:  Objection, Your Honor.  Can we approach?

THE COURT:  Sure.

. . . .

[DEFENSE COUNSEL]:  This is getting into expert testimony.  He's talking about the legalities of the boat.

THE COURT:  Well, I don't agree.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  This is a law enforcement officer just stating the facts under which I --

[DEFENSE COUNSEL]:  All right.

7

THE COURT: -- assume that if there's a regulation and/or . . . RSA, that --

. . . .

THE COURT: Objection overruled.

After defense counsel's objection was overruled, Dirth testified:

Q So as I was asking, if somebody isn't physically seated in these seats, but up here standing with -- leaning against these gunwales, or their butt partially up on those gunwales, is that a legal position?

A If somebody's actually -- excuse the language I'm using. But your butt cheek is on the gunnel or up on the bow, that's where the issue arises, so that would be illegal.

Q Okay. They would have to be seated in the seats?

A Or they could stand, as long as they're standing in the interior of the boat. No different if I was standing here versus maybe in the rear of the boat.

. . . .

Q I'm sorry, sergeant, as you were explaining about whether that's -- whether there was any erratic operation in your -- in what happened in this case, any evidence of that?

A Absolutely, there is. I mean, he flew out of the boat. A bow rider is a very common -- a common boat used all over the state. You see them on a daily basis, and it's just very -- it is just not commonplace to have people flying out of boats, I mean, in the marine industry. There would be an uproar. And you just -- those kinds of calls don't happen.

If I had seen that type of operating happen, I would have stopped the boat and I would have cited [the defendant].

On cross-examination, Dirth clarified:

Q And you were also told that . . . [the victim] frequently sat up in that area of the boat?

A If he did sit up there, it would be on the starboard side.

8

Q Right. And the law that you talked about when you were being asked questions this morning by [the prosecutor], that it's illegal to sit up on the bow in this area right here, that law applies equally to passengers, too, doesn't it?

A It does.

Q So it's not just a matter of that it would be illegal to sit up there if you were an operator of the boat; it's illegal to sit up there if you were a passenger, correct?

A Yes, it is.

      . . . .

Q Would you have also cited [the victim] for sitting up there, sir?

A I don't know. The operation would have been so egregious, that I probably would have charged [the defendant] with what I call -- it's a careless negligent statute, a misdemeanor. I don't see that --

Q The law regarding seating applies equally to passengers, as we established, correct?

A It does.

The defendant contends that Dirth's testimony was objectionable because it constituted a "plainly incorrect interpretation of the law," and was "improper expert testimony about the status of the law." Moreover, he asserts that his trial counsel's cross-examination "left the jury with the belief that either [the victim] or [the defendant] or both could have been cited for violating RSA 270-D:7, when in fact, only [the victim] had committed such a violation."

We are unable to conclude from this record that defense counsel's conduct fell below an objective standard of reasonableness. To the extent that the defendant asserts that his counsel failed to object to the witness's testimony as improper expert testimony, the record belies his assertion. Defense counsel, in fact, did object on this basis, and his objection was overruled.

To the extent that the defendant contends that his counsel failed to object that Dirth inaccurately summarized the pertinent law, defense counsel made this argument clearly at a later point in the trial:

[PROSECUTOR]: I intend to cross [the defendant] on the pamphlet that he didn't have -- because he didn't take the boater safety

course, which clearly shows, Judge, operating the boat with somebody sitting right where [the victim] is is illegal.

[DEFENSE COUNSEL]: That's inconsistent with the statute, Your Honor.

[PROSECUTOR]: No, it's not.

[DEFENSE COUNSEL]: Yes, it is.

. . . .

THE COURT: Okay. It appears, too -- and they have testimony this morning to support it, to reflect that it's -- this is issued by -- responsive by the State of New Hampshire to advise people [about] the laws in New Hampshire regarding boater safety. And so Defense counsel, or other people, might have a different impression of what the laws are. That's what the people that enforce the law are saying the intent of the law is. And while I appreciate that Defense counsel has read [RSA 270-D:7] to say what you're suggesting it says, I don't share your interpretation of that statute.

Although the defendant argues that his trial counsel failed to "challenge the state's interpretation of the law," the trial court disagreed with this assertion, as do we. In ruling on the defendant's motion for a new trial, the trial court found that, at trial, it had considered and rejected defense counsel's interpretation of RSA 270-D:7.

Moreover, we are not persuaded that Dirth, in fact, misstated the law. Although Dirth's testimony on direct examination might have left the jury with the impression that RSA 270-D:7 prohibits operating a boat while a passenger is sitting on the gunwales or bow, his testimony on cross-examination made clear that he believed that the defendant violated RSA 270:29-a, not RSA 270-D:7. Under RSA 270:29-a, a boat operator commits a misdemeanor when he operates a power boat "in a careless and negligent manner or so that the lives and safety of the public are endangered."

We are unable to conclude, on this record, that counsel's strategic choice to clarify the state of the law during his cross-examination of Dirth and in oral argument to the trial court rather than by objecting to Dirth's testimony on direct examination was not sound trial strategy. "This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion." Yarborough, 540 U.S. at 9; see State v. Fecteau, 140 N.H. 498, 502 (1995). Based upon this record, we hold that the defendant has failed to overcome the presumption that, under the circumstances, his trial counsel acted reasonably. See Hall, 160 N.H. at 584-85.

10

### B. Evidence that the Defendant Did Not Take a Boater Safety Course or Display the Correct Vessel Number on the Boat

The defendant next challenges his trial counsel's failure to object to evidence that he never took a boater safety course and that his boat did not display the correct vessel number. Although the defendant contends that such evidence was irrelevant and prejudicial and, therefore, objectionable, in fact, it was material to the two violation-level offenses with which he was charged and of which the trial court found him guilty.

The defendant was charged with, and found guilty of, failing to obtain a boater safety education certificate, as required by RSA 270-D:10, and of failing to display the proper vessel number on his boat, pursuant to his boat registration, as required by RSA 270-E:8. Thus, evidence that the defendant did not take a boater safety course and did not list the proper vessel number on his boat was both relevant and admissible. Contrary to his assertions, evidence that he did not take a boater safety course or display the correct vessel number on the boat, was not evidence of "other" bad acts, but was evidence of bad acts that were among those for which he was tried. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." People v. Ericksen, 793 N.W.2d 120, 125 (Mich. Ct. App. 2010).

In a footnote to his brief, the defendant contends that "[t]o the extent that . . . the evidence was relevant to prove matters being decided by the judge," his counsel was ineffective for failing to ask whether he would be willing to plead guilty to the two violation-level offenses. To support this contention, the defendant relies upon his own affidavit. Because the trial court was not required to believe the defendant's self-serving affidavit, we conclude that it fails to rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Hall, 160 N.H. at 584-85 (quotation omitted); see Ki Kang Lee v. Glebe, No. C14–05603 RBL, 2015 WL 1282150, at *7 (W.D. Wash. March 20, 2015) (holding that the state court reasonably concluded that the petitioner's self-serving affidavit failed to rebut the strong presumption of competence that counsel adequately consulted with him about whether to submit a certain jury instruction).

### C. Evidence that the Defendant Lacked a Boating License

The defendant next asserts that his counsel was ineffective for failing to object to evidence that he operated the boat without a license. Although he does not dispute that he lacked a boating license, he argues that such evidence was irrelevant. He also contends that, when combined with evidence that he did not take a boater safety course or display the correct vessel number on the boat, evidence that he lacked a boating license was excludable under New Hampshire Rule of Evidence 404(b).

11

Even if we assume that evidence that the defendant lacked a boating license was inadmissible, there is no reasonable probability that excluding it would have resulted in a different verdict.  See Strickland, 466 U.S. at 693 (noting that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; there is a "general requirement that the defendant affirmatively prove prejudice").  Indeed, the defendant does not argue that the result of his trial would have been different had evidence that he lacked a boating license been excluded.  Under these circumstances, we cannot find that defense counsel was ineffective for failing to object to the admission of such evidence.

D.  Evidence that the Defendant Drove the Boat with Too Many People On Board

The defendant next argues that his trial counsel was ineffective because he failed to object to testimony that, earlier in the day, the defendant had operated the boat with too many people on board.  There was evidence that, although the boat's capacity was seven people, earlier in the day, the defendant had operated it with nine people on board.  See RSA 270-D:5 (2010) (making it unlawful to operate a vessel "while carrying passengers . . . beyond its safe carrying capacity, taking into consideration weather and other operating conditions").  The defendant argues that this evidence was irrelevant and prejudicial.  Assuming without deciding that the defendant is correct, we are unable to conclude that defense counsel's failure to object to such evidence amounted to constitutional error.

During his cross-examination of Dirth, defense counsel elicited the following testimony:

Q  Sergeant Dirth, at the time of the accident, there weren't -- they weren't over the weight limit; is that correct?

A  No, they were not.

Q  In fact, there were four people on the boat at the time of the accident, correct?

A  Yes, there was.

In his closing argument, defense counsel explained:

Next we had Sergeant Dirth take up more of your time explaining that earlier in the day the number of passengers and the weight of the boat exceeded the legal limit.  Should they have done that when they went off to the sandbar?  No, they shouldn't have.  But did that have anything to do with the accident?  No, it

12

did not.  Because at the time of the accident there were four people on the boat and they were within the legal limit, again as Sergeant Dirth had to concede on cross-examination.  You should see this type of evidence for what it is.  It's smoke and mirrors and attempt to divert your attention from the eyewitnesses who were on the boat, three eyewitnesses that I previously mentioned, . . . that there was no dangerous or erratic operation leading up to or during the time of the accident.  It was a freak accident.

Given this record, we cannot say that defense counsel's decision to neutralize the evidence on this peripheral topic in his cross-examination of Dirth and closing argument, rather than by objecting to Dirth's testimony, failed to fall within the "wide range of reasonable professional assistance." Hall, 160 N.H. at 585 (quotation omitted).  "'The decision to neutralize the testimony rather than to object was a reasonable tactical choice.'" Nogueda v. Peery, No. 2:14–cv–1045 GGH P, 2015 WL 2448701, at *22 (E.D. Cal. May 20, 2015) (quoting, with approval, the state court's denial of the defendant's ineffective-assistance claim); see State v. Geboy, No. 14–02–09, 2003 WL 178616, at *6 (Ohio Ct. App. Jan. 28, 2003) (holding that defendant failed to establish ineffective assistance when, even if his counsel should have objected to certain of the prosecutor's statements in closing, his counsel "neutralized any prejudicial effects with a compelling closing argument attacking the state's evidence and lack thereof"); see also Hodges v. State, No. M2002-01334-CCA-R3-PC, 2003 WL 22325736, at *4 (Tenn. Crim. App. Oct. 10, 2003) (upon de novo review, rejecting the petitioner's argument that his trial counsel was ineffective for failing to object to various items of irrelevant evidence when counsel testified that his trial strategy was to use cross-examination to "neutralize unfavorable inferences or to turn seemingly damaging testimony into [favorable] evidence").

E.  Prosecutor's Argument

Finally, the defendant asserts that his trial counsel was ineffective because he failed to object to the prosecutor's opening statement and closing argument in which, he contends, the prosecutor improperly:  (1) argued that it was illegal to operate a boat with a passenger seated on the bow or gunwales; and (2) referenced evidence that the defendant did not have a boating license, did not take a boater safety course, did not display the proper vessel number on the boat, and drove the boat earlier in the day with too many people on board.

The defendant has failed to demonstrate that his counsel's failure to object to these comments fell below an objective standard of reasonableness. "The standard for reversible error in a prosecutor's opening statement is that the prosecutor must be shown to have acted in bad faith, the opening statement must be completely unsupported by the evidence, and the defendant

13

must be prejudiced thereby." State v. Gaudet, 166 N.H. 390, 397-98 (2014) (quotation and emphasis omitted). "In examining claims of prosecutorial misconduct during closing argument, we face the delicate task of balancing a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process." Id. at 398 (quotation omitted). "A prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." Id. at 399 (quotation omitted). "At the same time, there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice." Id. (quotation omitted).

The prosecutor's assertions in his opening statement that the defendant's "illegal operation of a boat while being under the influence of intoxicating liquor caused the death of [the victim]," and that one "can't operate a boat with somebody sitting" on the gunwales or bow, and his nearly identical assertions in his closing argument, were supported by the evidence, and, therefore, were not improper. As previously discussed, Dirth testified that, had he observed the defendant operating the boat with the victim seated on the bow or gunwales, he would have charged the defendant with misdemeanor careless and negligent operation. See RSA 270:29-a. The prosecutor's references in his opening statement and closing argument to evidence that the defendant did not have a boating license, did not take a boater safety course, did not display the proper vessel number on the boat, and drove the boat earlier in the day with too many people on board, likewise, were "within the latitude accorded prosecutors when summarizing and discussing the evidence presented." State v. Scott, 167 N.H. 634, 642 (2015). Accordingly, the defendant has failed to overcome the presumption that, under the circumstances, his trial counsel acted reasonably when he did not object to the prosecutor's opening statement or closing argument. See Hall, 160 N.H. at 584-85.

F.  Conclusion

For all of the reasons previously discussed, we conclude that the defendant has failed to establish that he received constitutionally defective assistance of counsel. "Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both constitutions, necessarily, we reach the same result under the Federal Constitution as we do under the State Constitution." Whittaker, 158 N.H. at 768.

Affirmed.

CONBOY, LYNN, and BASSETT, JJ., concurred.

14