**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0423, <u>State of New Hampshire v. Joanie Osgood</u>, the court on June 23, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Joanie Osgood, appeals her conviction, following a jury trial in Superior Court (<u>Nicolosi</u>, J.), on three charges of animal cruelty. <u>See</u> RSA 644:8 (2016). She argues that the evidence was insufficient to support the convictions.

To prevail upon her challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from such evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt as to the charged crimes. <u>State v. Cable</u>, 168 N.H. 673, 677 (2016). "[W]e objectively review the record to determine whether <u>any</u> rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." <u>Id</u>. (quotation omitted). In engaging in this analysis, we examine each item of evidence within the context of all the evidence, and not in isolation, <u>State v. Sanborn</u>, 168 N.H. 400, 413 (2015), mindful that "common sense evaluation of the credibility of witnesses is within the province and obligation of the jury," <u>State v. Young</u>, 159 N.H. 332, 339 (2009) (quotation, brackets, and ellipsis omitted); <u>see</u> <u>also</u> <u>State v. Spinale</u>, 156 N.H. 456, 463 (2007) (in deciding challenge to the sufficiency of evidence to convict, the trial court cannot weigh the evidence or inquire into the credibility of the witnesses).

When the evidence supporting one or more of the elements of a charged offense is solely circumstantial, the defendant must establish that the evidence does not exclude all reasonable conclusions except guilt. <u>Sanborn</u>, 168 N.H. at 413. The proper inquiry is not whether every possible conclusion consistent with innocence has been excluded, but whether all reasonable conclusions consistent with innocence based upon the evidence at trial have been excluded. <u>Id</u>. Under this standard, we "evaluate[] the evidence in the light most favorable to the prosecution and determine[] whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." <u>Id</u>. (quotation omitted).

In this case, the defendant was convicted of "[n]egligently permit[ting] or caus[ing] any animal in [her] possession or custody to be subjected to cruelty, inhumane treatment or unnecessary suffering of any kind." RSA 644:8, III(f). On appeal, the defendant does not contest the sufficiency of the evidence to establish her negligence or that the animals at issue, three horses, were subjected to cruelty, inhumane treatment, or unnecessary suffering. Nor does she contest the State's position that proof of her ownership of the horses may establish her possession or custody of them. Rather, her sole argument is that the State failed to prove that, at the relevant time, she in fact owned the horses. Accordingly, we assume, for purposes of this appeal, that proof of a defendant's ownership of an animal that the defendant negligently permits or causes to be subjected to cruelty, inhumane treatment, or unnecessary suffering may establish the defendant's possession or custody of that animal.

The evidence established that in the 1990s, the defendant began boarding horses at a farm in Northfield owned by Bert Southwick. Southwick would provide horses that were boarded at his farm with food, water, and shelter in a barn, and for horses other than stallions, he or an assistant would periodically let the horses out of the barn and to pasture. The horse owners were responsible for cleaning the stalls and for providing their horses with veterinary care, hoof care, grooming, training, exercise, and socialization.

From 1996 until 2011, the defendant regularly cared for her horses at the farm. In 2011, she stopped coming to the farm altogether. The defendant does not dispute that, in 2011, she owned the three horses that are at issue. Because those horses were stallions, Southwick would not let them out of the barn. In 2011, the defendant owed Southwick more than $17,000 in board.

By 2014, Southwick, who was elderly, had substantial health problems, and the barn had devolved into a state of substantial disrepair. The defendant's stallions had not been allowed out of their stalls in a long time, they were in poor health, and their stalls were full of feces and lacked adequate provisions. Amberlee Smock, another horse owner, offered to Southwick to have the defendant's stallions gelded so that they could be allowed out of the barn, but Southwick replied that she could not do that because she did not own the horses, and that it was up to the defendant to have the horses gelded. In April 2014, Smock reported her concerns to the Northfield police.

On May 19, 2014, a Northfield police officer observed the defendant attempting to remove one of the horses from the property, and told her that she could not remove the horse because there was an ongoing investigation. The defendant agreed to speak with the officer. She told the officer that, at that time, she owned several horses at the farm, including the three stallions and a mare. She further admitted that she had neither been to the farm nor paid Southwick in years. She told the officer that, in the past, Southwick had sold one of her horses to cover delinquent boarding fees, that she thought he would sell her

2

horses, and that she wanted to keep one of the stallions and sell two colts. She did not state, however, that she had any specific agreement with Southwick to sell the horses in order to cover her board arrearages. Nor did she state that she had agreed to transfer ownership of the stallions to Southwick. She explained that she was attempting to remove one of the stallions because she had learned of the investigation and of the circumstances at the farm. She had with her a book that she had created containing pictures of the horses and information about them so that "if . . . something happened to [Southwick] she would have something to indicate that they were hers."

On May 28, 2014, the defendant attended a veterinary examination of the three stallions. The defendant identified herself to the veterinarian as the horses' owner, gave the veterinarian permission to treat the horses, and told the veterinarian that she was attempting to "re-home" the horses. That same day, the defendant agreed to sell her mare to Smock. She handwrote and signed a bill of sale declaring that she had sold the mare for "$500.00 cash to be paid to Bert Southwick for exchange for board for Joanie Osgood horses."

On June 6, 2014, the three stallions were removed from the farm. The defendant was present, was very upset, and was yelling at those who were removing the horses to stop and that the horses belonged to her. When a Northfield police officer heard the commotion, he approached the defendant, asked her to stop, and asked who she was; the defendant indicated that she owned the horses that were being taken. A couple of days before the horses were removed, the defendant, appearing distraught, approached the owner of the rescue farm to which the horses were to be removed, and screamed at the rescue farm owner that the rescue farm owner was going to take her horses.

On appeal, the defendant argues that the evidence was insufficient to establish her ownership of the stallions because, between 2011, when she concedes she owned the stallions, and 2014, when the police began their investigation, "there was no evidence presented that . . . [she] took any actions which would demonstrate 'ownership', or the element of custody or possession." She emphasizes that, during her interview with the Northfield police officer, she made statements that Southwick owned the stallions and was going to sell them in order to pay down her arrearage. According to the defendant, the "only inference that can be drawn from" her 2014 statements of ownership and conduct is that she had "renewed her involvement with the horses and did what she could to aid them" after learning of their condition, and after she had already relinquished ownership. We disagree.

The record contains evidence that, during the course of the animal cruelty investigation, the defendant repeatedly represented to others, including Northfield police officers, Smock, the veterinarian, and the owner of the rescue farm, that she in fact owned the stallions. Moreover, the defendant's conduct during this time frame was consistent with one who owned the horses. For

3

instance, she attempted to remove one of the stallions from Southwick's farm, attended veterinary examinations of the stallions and provided the veterinarian with permission to treat them, stated that she was attempting to "re-home" the stallions, maintained and provided the police with a book documenting her ownership of the stallions, and expressed distress when the stallions were taken from her. Although at times during her interview with a Northfield police officer, the defendant suggested that Southwick owned the stallions, the officer testified that the defendant only stated that Southwick owned the horses after the officer "started talking about how bad the conditions [at the farm] were and became more interrogating . . . in regards to those matters." The defendant otherwise maintained that the stallions belonged to her, and did not state that she had an agreement to relinquish ownership of them to Southwick. Indeed, when Smock offered to have the stallions gelded, Southwick responded that only the defendant could approve of such a procedure.

Even if we assume, without deciding, that the evidence of the defendant's custody or possession of the stallions was solely circumstantial, the evidence at trial, viewed most favorably to the State, does not support a <u>reasonable</u> conclusion that Southwick owned the horses between 2011 and the 2014 animal cruelty investigation. <u>Sanborn</u>, 168 N.H. at 413. Viewing the evidence most favorably to the State, we conclude that a rational jury could have found the defendant guilty beyond a reasonable doubt. <u>Cable</u>, 168 N.H. at 677.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

4