NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Nos.   2018-0606
          2020-0338


THE STATE OF NEW HAMPSHIRE

v.

JERRY NEWTON

Argued: September 14, 2021
Opinion Issued: July 8, 2022

Office of the Attorney General (Bryan J. Townsend, II, assistant attorney general, on the brief and orally), for the State.


Lothstein Guerriero, PLLC, of Concord (Theodore M. Lothstein and Kaylee C. Doty on the brief, and Theodore M. Lothstein orally), for the defendant.

HANTZ MARCONI, J.  The defendant, Jerry Newton, appeals his convictions on three counts of exploitation of an elderly, disabled, or impaired adult in violation of RSA 631:9, I(a) (2016) and RSA 631:10 (2016) following a jury trial in Superior Court (Brown, J.).  He argues that the trial court erred when, at trial, it excluded out-of-court statements made by the defendant's parents and a financial planner.  He also appeals the trial court's denial of his

post-conviction motion for a new trial based upon ineffective assistance of counsel. The State cross-appeals, arguing that the trial court erred by ordering a hearing to review and reconsider the sentence. We affirm.

I

The jury could have found the following facts. The defendant became trustee of the Newton Family Trust and retained power of attorney over both the victim (the defendant's mother) and her husband (the defendant's father) in 2014 as a result of their failing health. The Trust created a fiduciary duty in the trustee and specified that the assets and money held by the Trust were to be used only for the benefit of the victim and her husband until their death. The victim's husband died on December 21, 2015.

By July 2017, the New Hampshire Attorney General had launched an investigation into allegations that the defendant exploited the victim for large sums of money. The investigation focused on three main accounts belonging to the victim and her husband: (1) an individual retirement account (IRA); (2) the Trust account; and (3) a personal checking account (FNBC Account). The defendant was indicted on four counts of financial exploitation of an elderly, disabled, or impaired adult in violation of RSA 631:9 (2016 & Supp. 2021) and RSA 631:10. Specifically, the indictments alleged that between September 2015 and August 2016 the defendant "recklessly, for his own profit or advantage" either temporarily or permanently took the personal property or financial resources of the victim, an elderly adult, "in breach of a fiduciary obligation" by using the victim's money or personal property "for the benefit of someone other than [the victim], not being authorized to do so by the instrument establishing the fiduciary obligation." Three of the four counts related to the defendant's use of the victim's money and assets, and the last count related to the defendant's use of two checks made out to the victim (the Honeywell Checks).

Prior to trial, the defendant provided his trial counsel with 350 pages of printed text messages between himself and his wife that trial counsel later disclosed to the State during discovery. Trial counsel believed that the text messages would be helpful and that "[t]he good outweigh[ed] the bad." During the defendant's case-in-chief, trial counsel called the defendant's wife as a witness and, through her testimony, introduced a fairly exculpatory text message exchange between the defendant and his wife. On cross-examination, the State introduced a text message sent to the defendant by his wife that read "I did the math in my head and we could spend 180,000 appropriately 'for them' in a short time, then pay 120,000 in taxes. It's better than giving it to the state or that whore." The record indicates that trial counsel understood the phrase "that whore" to refer to the victim. The State also used several other text messages to impeach the wife's testimony.

The State called Investigators Sullivan and O'Brien, who had compiled and reviewed the relevant financial and business records. Through Sullivan's testimony, the State provided evidence of "which accounts money originated in, which accounts it was moved into, who moved the money, and what the money was spent on." Sullivan testified about the contents of a summary he had created, describing "the flow of money" from the three accounts during the relevant period of time. The summary showed that the defendant depleted all three accounts of funds between November 2015 and August 2016. The summary also detailed where the defendant moved the money, demonstrating that the defendant used the money to pay off his own debts and placed the money into both personal and business bank accounts.

O'Brien testified that he interviewed the defendant as part of the investigation. The defendant told O'Brien that his father had changed the beneficiary of the IRA months prior to his death. However, O'Brien testified that he was unable to discover any documents to corroborate this assertion. On cross-examination, trial counsel elicited testimony from O'Brien opining that the defendant was being untruthful during the investigation, especially as it related to the Honeywell Checks.

The jury convicted the defendant on the three counts of financial exploitation, finding the defendant: (1) used $73,759.83 belonging to the victim to pay various bills for the benefit of someone other than the victim; (2) took $22,168.14 from the sale of the victim's home for the benefit of someone other than the victim; and (3) took approximately $227,460.94 from the IRA, of which the victim was the beneficiary, and used the funds for the benefit of someone other than the victim. The jury acquitted the defendant on one count of financial exploitation of an elderly adult related to the use of the Honeywell Checks.

The defendant filed a timely mandatory appeal from his convictions and the resulting sentence. Subsequently, at the defendant's request, we stayed the appeal to allow him to file in the trial court a motion for a new trial based upon ineffective assistance of counsel. The trial court denied that motion, but concluded that trial counsel's deficient performance with respect to the text messages affected the sentencing decision. Accordingly, the trial court ordered a hearing to review and reconsider the sentence and then stayed further proceedings pending appellate review. In response, the defendant filed a discretionary appeal from the denial of his motion for a new trial, and the State filed a cross-appeal from the decision to hold a hearing to review and reconsider the sentence. We accepted those appeals and consolidated them with the defendant's direct appeal.

3

## II

We first address the defendant's direct appeal of his convictions.  The defendant first argues that the trial court unsustainably exercised its discretion when it excluded certain out-of-court statements made by the defendant's parents and a financial planner.  The State counters, arguing that the trial court sustainably exercised its discretion because it allowed the defendant to testify to the effects the conversations had on him and to argue in closing that he acted at the direction of his father and a financial advisor.  In addition, the State argues that any error was harmless beyond a reasonable doubt.  Assuming, without deciding, that the trial court erred by excluding the out-of-court statements, we agree with the State that any error was harmless.

To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict.  State v. Racette, 175 N.H. ___, ___ (decided April 26, 2022) (slip. op. at 6).  This standard applies to both the erroneous admission and the exclusion of evidence.  Id.  An error may be harmless beyond a reasonable doubt if: (1) the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight; or (2) the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt.  Id.  We review these factors to determine whether an error affected a verdict.  Id.  Either factor can be a basis supporting a finding of harmless error beyond a reasonable doubt.  Id.

Here, despite the trial court's ruling, on direct examination, the defendant was allowed to testify without objection to the substance of conversations he had had with his father and a financial planner and what decisions they made together.  In closing, the defendant specifically argued that "after meeting with a financial planner and [the defendant's father], [the defendant] decided to change that trust, to move that trust money," and "after consultation with his parents, he made these transactions."  Thus, the defendant ultimately introduced the substance of the conversations and was able to offer arguments based on that evidence.  Accordingly, we conclude that the excluded evidence was cumulative and inconsequential in relation to the strength of the State's evidence of guilt.  Therefore, we conclude, beyond a reasonable doubt, that any error in excluding the out-of-court statements did not affect the verdict.  Thus, any error was harmless.  See id.

## III

We next address the defendant's appeal of the trial court's denial of his post-conviction motion for a new trial based upon ineffective assistance of counsel.  The defendant's claim for ineffective assistance of counsel rests upon both the State and Federal Constitutions.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV.  Because the standard for determining whether a

4

defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, we will examine the constitutional competency of counsel's performance under the State Constitution, and rely upon federal case law only for guidance. State v. Kepple, 155 N.H. 267, 269 (2007); see Strickland v. Washington, 466 U.S. 668 (1984).

Both the State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. State v. Cable, 168 N.H. 673, 680 (2016). To prevail upon a claim of ineffective assistance of counsel, the defendant must demonstrate first that counsel's representation was constitutionally deficient, and second, that counsel's deficient performance actually prejudiced the outcome of the trial. Id.

To meet the first prong of this test, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. We judge the reasonableness of counsel's conduct based upon the facts and circumstances of that particular case, viewed from the time of that conduct. Id. As we have explained, judicial scrutiny of counsel's performance must be highly deferential; a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Id. Because of the inherent difficulties in making this evaluation, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See id. Because the proper measure of attorney performance remains simply reasonableness under prevailing professional norms, to establish that his trial attorney's performance fell below this objective standard of reasonableness, the defendant must show that no competent lawyer would have engaged in the conduct of which he accuses his trial counsel. See id. at 680-81.

To meet the second prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 681. A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome. Id. The prejudice analysis considers the totality of the evidence presented at trial. Id. Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact. Id. Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo. Id. A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective. State v. Collins, 166 N.H. 210, 212 (2014).

The defendant argues that the trial court erred in denying his motion for a new trial because his counsel provided constitutionally deficient

representation to the prejudice of his case at trial. He asserts that trial counsel provided ineffective assistance of counsel by: (A) calling the defendant's wife as a witness; (B) eliciting inadmissible opinion testimony on the credibility of the defendant; and (C) disclosing a series of inculpatory text messages to the State. We consider each allegation in turn.

A. Calling the Defendant's Wife as a Witness

The defendant first argues that trial counsel was ineffective because he called the defendant's wife to testify at trial. The trial court found that the defendant directed trial counsel to call the defendant's wife as a witness despite trial counsel's advice that his wife's testimony would be damaging to his case. The court found that trial counsel "fully informed [the d]efendant of the potential consequences and tried to discourage [him] from having [the defendant's wife] testify, but [the d]efendant chose to disregard those warnings," insisting she testify. The trial court concluded that "[u]nder these circumstances, [it] [could not] find that [trial counsel]'s performance was constitutionally deficient" and that the defendant had failed to meet the first prong of an ineffectiveness test. On appeal, the defendant argues that the trial court erred because trial counsel did not fully inform him of the damage that would be done to his case if the defendant's wife testified. We disagree.

In State v. Candello, 170 N.H. 220 (2017), we observed that attorneys have a duty to consult with their clients regarding important decisions, including questions of overarching defense strategy. Candello, 170 N.H. at 228. However, that obligation does not require counsel to obtain the defendant's consent to every tactical decision. Id. The decision of whether to object to inadmissible evidence is an aspect of trial strategy that counsel may make on behalf of a defendant. Id. at 229. This does not mean that counsel is required to ignore the defendant's request to allow the admission of such evidence. Id. Rather, the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Id. This is so because trial counsel, while held to a standard of reasonable effectiveness, is still only an assistant to the defendant and not the master of the defense. Id. As a result, in evaluating strategic choices of trial counsel, we must give great deference to choices that are made under the explicit direction of the client. Id. Accordingly, if counsel is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed. Id.

Here, trial counsel testified in his deposition that the defendant's wife "practically forced her way into testifying" and intended to do so from the outset of the case. He described the defendant's wife as "very high strung, very emotional . . . and hard to have a normal . . . calm conversation with." He articulated that he believed the defendant's wife "was all about the money" and

6

that she hurt the defendant's theory of the case. Trial counsel also testified that, leading to trial, he counseled the defendant that he and his legal partner believed that the defendant's wife's testimony would be more inculpatory than exculpatory and provided their rationale. He stated that, prior to trial, he gave the defendant a final warning, urging him not to call his wife as a witness. During that conversation, the defendant acknowledged that he understood trial counsel's advice but directed trial counsel to call her regardless, stating, "I know you have to tell me these things but if [my wife] wants to testify, she's going to testify."

We conclude that the record supports the trial court's findings that trial counsel thoroughly explained the potential consequences of calling the defendant's wife to testify and that the defendant directed him to call her regardless. As a result, we cannot say that trial counsel's actions here, done at the direction of the defendant, were objectively unreasonable. See id.; see also Cable, 168 N.H. at 680-81. Thus, under the circumstances, we conclude that the defendant has failed to demonstrate that trial counsel's performance was constitutionally deficient. See Candello, 170 N.H. at 228-29.

### B. Investigator O'Brien's Opinion Testimony

The defendant next contends that the trial court erred by failing to find that his counsel was ineffective because he elicited O'Brien's opinion of the defendant's truthfulness during an investigatory interview. The trial court found that even if counsel's conduct was constitutionally deficient, the defendant was not prejudiced. We agree with the trial court.

Upon review of the record, we conclude that the defendant has failed to demonstrate he was prejudiced by the challenged testimony. Although counsel elicited testimony from O'Brien on cross-examination that he "saw several signs of deception" when interviewing the defendant, the State introduced "a wealth of other evidence that cast doubt upon" the defendant's credibility. Accordingly, the defendant has not persuaded us that there is a reasonable probability that the outcome would have been different if trial counsel had not elicited the challenged testimony. See Cable, 168 N.H. at 681.

### C. Disclosure of the Text Messages

Finally, the defendant argues that the trial court erred when it concluded — after having found that disclosure of the text messages fell below an objective standard of reasonableness — that the introduction of the text messages did not prejudice his case at trial. The trial court found that the disclosure and introduction of the text messages did not prejudice the defendant because he failed to demonstrate that there was "a reasonable probability that the jury would have returned a not guilty verdict if the [text] messages had not been introduced." We agree with the trial court.

7

The defendant argues that the disclosure of the text messages prejudiced his case at trial because it undermined his defense that he "acted in good faith, not recklessly." However, the relevant question is not whether trial counsel's deficient performance undermined the defense; rather, it is whether, absent trial counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. Id. The defendant has not satisfied that standard.

Even without the text messages, the State presented substantial evidence of the charged conduct. Through Sullivan's testimony, the State introduced a summary of "the flow of money" between the IRA, the Trust account, the FNBC Account, and the defendant's personal or business accounts. The summary demonstrated that the defendant took in excess of $300,000 from the victim and spent it for the benefit of individuals other than the victim. Sullivan's testimony confirmed that the majority of the transactions related to the three accounts benefitted the defendant, his wife, or his business. Moreover, the defendant testified that he believed the money was his and that he used much of the money for his own expenses. Given the other evidence relevant to the defendant's conduct, we conclude that the defendant has failed to demonstrate there is a reasonable probability that, but for the disclosure of the text messages, the result of the trial would have been different. See id. at 681.

IV

We next address the State's cross-appeal, which asks us to reverse the trial court's ruling that the disclosure of the text messages constituted deficient performance. Citing Candello, 170 N.H. at 230, the State first argues that because the defendant directed trial counsel to disclose the text messages, their disclosure could not constitute deficient performance by counsel.

Based on trial counsel's deposition testimony and an email exchange between trial counsel and the defendant, the trial court "decline[d] to find that [the defendant] directed [trial] counsel to introduce the [text] messages." As a result, the trial court concluded that Candello did not apply to the facts of this case. We will not disturb the trial court's factual findings unless they are unsupported by the evidence or are erroneous as a matter of law; however, we review de novo the ultimate question of whether the disclosure constituted ineffective assistance of counsel. See Cable, 168 N.H. at 681.

The record supports the trial court's factual finding that trial counsel, rather than the defendant, made the strategic choice to disclose the text messages. Emails exchanged between trial counsel and the defendant show that, although the defendant initially brought the text messages to trial counsel's attention, he sought counsel's advice on the usefulness of the messages. Trial counsel determined that "[t]he good [text messages]

8

outweigh[ed] the bad." Furthermore, during his deposition, trial counsel testified that he believed the text — "I did the math in my head and we could spend 180,000 appropriately 'for them' in a short time, then pay 120,000 in taxes. It's better than giving it to the state or that whore" — could be explained. He also explained that, after reviewing the entirety of the text messages, he concluded that they contained "several very good messages and . . . other messages that supported [the defendant's] theory of this case." Based on the foregoing, we conclude that the record supports the trial court's factual determination that the defendant did not direct trial counsel to disclose the text messages. We, therefore, agree that Candello is inapplicable and does not preclude a finding of deficient representation. See Candello, 170 N.H. at 230.

The State next argues that disclosure of the text messages was not deficient representation because trial counsel had an ethical obligation to disclose the text messages once it became clear that the messages contradicted aspects of his witnesses' testimony. We disagree.

New Hampshire Rule of Professional Conduct 3.3 states, in pertinent part:

> A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and comes to know [o]f its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

N.H. R. Prof. Conduct 3.3(a). Comment 10 to the 2004 ABA Model Code provides additional guidance with respect to remedial measures that must be taken in the event a witness testifies untruthfully. Comment 10 states "the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6." N.H. R. Prof. Conduct 3.3 2004 ABA Model Code Comment [10]. However, there is no requirement that a disclosure necessary to remedy the false testimony be a specific form of evidence, like the text messages. If trial counsel had known that aspects of the defendant's or the defendant's wife's testimony were false, "the advocate's proper course [would be] to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence." Id. After conferring with his client, trial counsel could have taken other remedial steps prior to disclosing the text messages. Indeed, Comment 10 encourages the client to correct any false statements through his own testimony. See id. Thus, even assuming trial counsel would have been required to make some disclosure under Rule 3.3, we

9

conclude that the State has not demonstrated that disclosure of the text messages rather than any other form of evidence would be "reasonably necessary to remedy the [potential] situation." Id.

The State next argues that the text messages were required to be disclosed through reciprocal discovery under New Hampshire Rule of Criminal Procedure 12(b)(4). The State's argument assumes that the content of the text messages are "witness statements." The State makes no legal argument, nor does it point to any legal authority, to support the assumption that text messages exchanged prior to the onset of a criminal investigation are "witness statements." A blanket assertion, without developed legal argument is insufficient to warrant judicial review. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[A] mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." (quotation omitted)).

Finally, the State argues that the trial court erred in ordering a hearing to review and reconsider the sentence based on its conclusion that disclosure of the text messages constituted deficient performance that affected the sentencing decision. Its sole argument on this point is "[i]f this Court agrees and reverses the trial court's determination, then the trial court's decision to grant a sentence review hearing must also be reversed." As we have concluded that the trial court did not err in concluding that disclosure of the text messages fell below an objective standard of reasonableness, we need not consider the State's other arguments, having rejected the premise on which they rely. State v. Batista-Salva, 171 N.H. 818, 824 (2019).

V

In sum, we conclude that any assumed error by the trial court in excluding the out-of-court statements of the defendant's parents and financial planner was harmless beyond a reasonable doubt. We also conclude that the defendant has failed to carry his burden to demonstrate that the trial court erred in denying his motion for a new trial. Finally, given our conclusion that the trial court did not err when it concluded that the disclosure of the text messages constituted deficient performance, we will not disturb the trial court's decision to review and reconsider its sentencing decision. See id. All other issues raised in the notices of appeal, but not briefed, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

10